UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ROBERT KENT,

    Plaintiff,

v.                                                Case No. 1:20-cv-491
                                                     Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

On August 10, 2001, plaintiff fractured his left proximal tibia while racing a four-wheeler at the Kalamazoo County Fairgrounds. PageID.204, 441. Plaintiff filed an application for disability which was denied in 2002. PageID.325.[1] On January 7, 2006, about 4½ years after his first injury, plaintiff fractured his left femur after slipping and falling on ice. PageID.204, 208. On August 13, 2017, about 16 years after the first injury, plaintiff filed an application for DIB, alleging a disability onset date of August 11, 2001. PageID.199.

Plaintiff identified his disabling conditions as: chronic pain; arthritis; hardware in femur from fracture; hardware in knee from fracture in fibula and tibia; fractured ankle; fused

---

[1] At the administrative hearing, the ALJ advised plaintiff that "[e]ven though your application was previously denied, I'm not bound by any previous Decision and I'll make a new Decision based on the evidence before me." PageID.219.

ankle; foot flop; compartment syndrome; joint pain; hip pain; and sciatica. PageID.329. Prior to applying or DIB, plaintiff completed the 12th grade and had additional training in carpentry. PageID.330. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on March 13, 2019.[2] PageID.119-213. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

---

[2] The Court notes that defendant's brief erroneously states the date of the ALJ's decision as January 7, 2019. *See* Defendant's Brief (ECF No. 15, PageID.665); *see* PageID.213, 217.

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff met the insured status of requirements of the Social Security Act during the 40-quarter (10-year) period beginning on January 1, 1997, and ending on December 31, 2006. PageID.201. Plaintiff did not engage in substantial gainful activity from the alleged onset date of August 11, 2001, through his date last insured of December 31, 2006. PageID.202.[3]

At the second step, the ALJ found that through the date last insured (December 21, 2006) plaintiff had severe impairments of " 'status post' (s/p) severe fractures of the left tibia and fibula with multiple orthopedic surgeries and postoperative therapies, and s/p supracondylar fracture of the left femur with surgery and postoperative therapy." PageID.202. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.204.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(a), except that he could climb ramps and stairs occasionally, but could never climb ladders, ropes, or scaffolds; he could occasionally balance, kneel, crouch, and crawl; and he could perform no work at unprotected heights.

---

[3] While plaintiff did work from 2009 through 2013, the ALJ found that "those additional 15 QCs [quarters of coverage] fail to toll forward the date last insured because they are too distanced from the period in which he had earned the 20 QCs." PageID.201.

PageID.205. The ALJ also found that plaintiff has no past relevant work as defined in the regulations. PageID.212.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level. PageID.212-213. Specifically, the ALJ found that plaintiff could perform the requirements of over 1.5 million unskilled sedentary jobs in the national economy such as telephone quotation clerk (900,000 jobs), nut sorter (450,000 jobs), and final assembler (200,000 jobs). PageID.213. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from August 11, 2001 (the alleged onset date) through December 31, 2006 (the date of the decision). PageID.213.

### III. DISCUSSION

Plaintiff has raised four errors on appeal.

**A. The ALJ committed reversible error in failing to find that plaintiff's left tibial plateau fracture meets and/or equals the criteria of Listing 1.03.**

As discussed, plaintiff suffered a major fracture of his left proximal tibia on August 10, 2001. At step three, the ALJ reviewed plaintiff's condition under Listings 1.02A ("Major dysfunction of a joint(s) (due to any cause)") and 1.06 ("Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones"). PageID.204. Plaintiff contends that the ALJ erred because his injury meets the requirement of Listing 1.03 ("Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint").[4]

---

[4] The Court notes that effective April 1, 2021, the criteria of Musculoskeletal Listings changed. *See* POMS DI 34121.013 Musculoskeletal Listings from 09/29/16 to 04/01/21. Plaintiff's application (August 13, 2017) and decision (March 13, 2019) were prior to these changes.

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). Thus, "[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

While the regulations do not require an ALJ to address every listing, the ALJ should discuss a listing if the record raises a "substantial question" as to whether the claimant could qualify as disabled under that listing. *Sheeks v. Commissioner of Social Security Administration*, 544 Fed. Appx. 639, 641 (6th Cir. 2013). In contesting the ALJ's evaluation, a claimant "must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson v. Commissioner of Social Security*, 579 Fed. Appx. 426, 432 (6th Cir. 2014). "Rather, the claimant must point to specific

6

evidence that demonstrates he reasonably could meet or equal every requirement of the listing."

*Id*. Based on the record in this case, the Court concludes that plaintiff did not meet his burden.

Plaintiff contends that he met the requirements of Listing 1.03, which provides as follows:

> *Reconstructive surgery or surgical arthrodesis of a major weight bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

Listing 1.03, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The "inability to ambulate effectively" means:

> an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

*Id*. at 1.00B2b(1).

With respect to "effective ambulation," the regulations provide that,

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*. at 1.00B2b(2) (emphasis omitted).

The ALJ addressed plaintiff's ability to ambulate effectively while addressing Listings 1.02A and 1.06, both of which require that the claimant has the inability to ambulate effectively:

> [P]ertinent to both Listing 1.02A and Listing 1.06, neither of the left leg fractures resulted in an "inability to ambulate effectively," as that term is defined in Section 1.00B2b of the musculoskeletal disorders listings, within 12 months of their respective traumatic onsets in August 2001 and in January 2006. Inability to ambulate effectively is defined as an "extreme limitation of the ability to walk"- *i.e.*, very seriously limited ability to independently initiate, sustain, or complete activities- and one defined generally as having such insufficient functioning of the lower extremity(s) to permit independent ambulation without the use of a hand-held assistive device(s) that compromises the functioning of both upper extremities (*e.g.*, a walker, two crutches, or two canes).
>
> Mr. Kent did require crutches for a few months after the August 2001 fractures and complicated surgeries, but he progressed to "as tolerated" weight-bearing on the left lower extremity by his January 2002 physical therapy evaluation and did not require a walker or two crutches to ambulate (Ex. 2F/73). Following the January 2006 left femur fracture, he was on crutches for the next two months but progressed, with physical therapy, to a "standard cane" and full weightbearing ("FWB") by late March 2006 (Ex. 2F/55; *cf* Ex. 2F/52). Thus, well within a 12-month period after traumatic onset of each fracture(s) to the left lower extremity, the claimant improved to a point that he was able to ambulate effectively. His impairments did not meet or medically equal the severity criterion of Listing 1.02A and 1.06 through the date last insured.

PageID.204-205.

Given this medical history, plaintiff could not demonstrate that he met the requirements of Listing 1.03, because he returned to effective ambulation within 12 months of onset both the 2001 injury and the 2006 injury. Plaintiff has failed to demonstrate that the ALJ erred in failing to find that he met the requirements of Listing 1.03.

Plaintiff also contends that his condition is equivalent to Listing 1.03. "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S.

8

521, 531 (1990) (emphasis in original).  A social security claimant cannot qualify for benefits under the equivalence step by merely "showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*.  Plaintiff failed to demonstrate that his condition was medically equivalent to Listing 1.03.  As discussed, plaintiff failed to demonstrate that he was unable to ambulate effectively for a period of 12 months.  Accordingly, this claim of error will be denied.

> **B. The ALJ committed reversible error in failing to evaluate plaintiff's mental impairments and resulting functional limitations as required by 20 C.F.R. § 404.1520a.**
>
> **C. The ALJ committed reversible error in failing to develop the record by not ordering a psychological examination in this case given the lack of support for the then unrepresented plaintiff's mental symptoms in the record.**

Plaintiff contends that the ALJ incorrectly stated that there was no evidence that plaintiff had psychological symptoms during the relevant time period.  Plaintiff's Brief (ECF No. 14, PageID.658).  The ALJ addressed this issue as follows:

> Finally, in his written responses to the "Function Report – Adult" and in his testimony at the January 2019 hearing, Mr. Kent stated that his years of chronic pain are associated with feeling depressed, agitated, and fatigued (Ex. 4E/l, 6). No evidence during the relevant period, including January 2006-April 2006 medical treatment notes within the same year as the date last insured, report these or other psychological symptoms had been affecting the claimant (Ex. 1F, 2F; 4F). The evidence is insufficient to support any medically determinable mental impairment during the relevant period through the date last insured of December 31, 2006.

PageID.204.

Plaintiff points to an inpatient rehabilitation treatment record from August 30, 2001 (a few weeks after the first accident), in which Igor G. Kaps, M.D. examined plaintiff with respect to his intensive inpatient rehabilitation treatment.  PageID.476.  The doctor continued plaintiff's pain management and noted,

9

> The patient also appears very anxious and possibly even depressed. Will ask for a psychological evaluation.

PageID.476. There is no record that plaintiff received a psychological evaluation. The only other evidence related to a mental impairment is a note the next day which appears to be from occupational therapy, which lists plaintiff's "mood/affect/behavior" as "subdued, anxious, unwilling to participate in therapy." PageID.421. There is no evidence that plaintiff underwent a required treatment for a mental disorder during the relevant time period of August 11, 2001, through December 31, 2006.

In a related issue, plaintiff contends that the ALJ failed to develop the record because he did not order a psychological examination. The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Wilson v. Commissioner of Social Security*, 280 Fed. Appx. 456, 459 (6th Cir. 2008), citing *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). When this special duty exists, the ALJ must scrupulously and conscientiously explore all of the facts relevant to the claims of the unrepresented claimant. *Lashley*, 708 F.2d at 1051-52.

Here, the record does not trigger the ALJ's special duty to develop the record. Plaintiff was advised of his right to counsel before the administrative hearing. PageID.219. When the ALJ advised plaintiff of his right to have an attorney, plaintiff advised the ALJ that he wanted to proceed without an attorney and signed a waiver of representative form. PageID.219-220. Plaintiff was adequately informed of his right to legal representation. *See Johnson v. Commissioner of Social Security*, 97 Fed. Appx. 539, 542 (6th Cir. 2004) (Social Security claimant was adequately informed of his right to counsel when he received written notices of his right to

representation prior to the administrative hearing, the ALJ advised the claimant of his right to counsel, and the claimant elected to proceed without legal representation).

While plaintiff proceeded without counsel, the record does not reflect that he was incapable of presenting an effective case. The administrative record contained plaintiff's medical records (PageID.405-639) including a function report from his wife (PageID.353-360). Plaintiff had a high school education, clearly articulated his claims, and provided relevant responses to the questions posed to him at the administrative hearing (PageID.223-245). The hearing transcript does not reflect that plaintiff was hampered by a lack of familiarity with the hearing procedures. Furthermore, even if the ALJ had a special duty to develop the record, there is no evidence that plaintiff suffered from a mental impairment before his date last insured.[5] At most, Dr. Kaps' notation indicates that plaintiff exhibited possible depression a few weeks after the accident. Accordingly, plaintiff's claims of error with respect to his alleged mental impairments are denied.

### D. The ALJ failed to apply SSR 02-1p in evaluating the severity of Mr. Kent's obesity, as indicated by his weight of 225 pounds.

The gist of this claim is that the ALJ failed to consider that "obesity bearing down on the left ankle exacerbated plaintiff's pain." Plaintiff's Brief at PageID.660. While obesity is no longer a listed impairment, the Commissioner addresses the effects of obesity on a claimant's ability to perform work-related activities. As one court explained,

> The social security administration deleted obesity from the Listing of Impairments and views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. Soc. Sec. Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002). The ruling provides guidance for evaluating a claimant's obesity, but does not create a separate procedure requiring the Commissioner to consider obesity in every case. *See Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006).

---

[5] At the administrative hearing on January 7, 2019, plaintiff testified that, "I deal with a lot of depression problems." PageID.244. However, the Court notes that this testimony involved plaintiff's condition in January 2019, more than 12 years after his date last insured (December 31, 2006).

*Austin v. Commissioner of Social Security*, 714 Fed. Appx. 569, 573-74 (6th Cir. 2018).

> Here, the ALJ addressed plaintiff's claim that obesity exacerbated his condition:
>
> Based on the claimant's reported height of 5 feet and 10 inches and weight at 219 pounds, *he might have had* a medically determinable impairment of "Level I-class" obesity per a body mass index ("BMI") of 31 (Ex. 2E/2) (SSR 02-lp *citing* Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998)). However, there are very few recorded vital statistics by medical sources during the relevant period that do not convincingly support that he had obesity, or that it had caused any significant exacerbating effect on his s/p multiple left leg fractures. For instance, his weight in November 2001 was 193 pounds, which would have fallen below the threshold of even Level-I class obesity per BMI of 27 ("Overweight" body status) (Ex. 1F/75). While in January 2006 his weight of 225 pounds is comparable to his reported weight in the disability application, his height was reported as two inches more – *i.e.*, 6 feet and 0 inches – and shows a borderline Level I obesity at a BMI of 30.5 (Ex. 2F/20).  The undersigned finds neither direct evidence nor otherwise persuasive medical or other evidence supporting a reasonable inference that the claimant's Level I obesity per BMI of 30-31 had caused any significant limitation in his ability to do basic physical or other work-related activities through the date last insured. Accordingly, this impairment is considered non-severe.

PageID.202 (emphasis added).

The ALJ adequately evaluated the effect of plaintiff's borderline obesity.  In addition, the medical record supports the ALJ's conclusion that plaintiff's weight did not cause a significant limitation in his ability to perform work-related activities.  When plaintiff started physical therapy for his second injury in January 2006, his prior functional status was "[a]mbulatory without assistive device, working part time."  PageID.208, 527.  At plaintiff's last physical therapy session on April 7, 2006, he reported significant improvement with "no (0/10) left knee pain at rest and just 1/10 pain with activity."  PageID.208, 537 (emphasis omitted).  Accordingly, this claim of error will be denied.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED**. A judgment consistent with this opinion will be issued forthwith.

Dated: March 8, 2022  /s/ Ray Kent
RAY KENT
United States Magistrate Judge